Microsoft Word 97-2003 Document MSWordDoc Word.Document.8 The case is number 08-1500 Anascape Limited against Microsoft Corporation and Nintendo of America. Mr. Lee. Thank you, Your Honor. To the plaintiff's court, my name is Bill Lee and together with my partner, Bob Gunther, I represent the defendant appellant, Nintendo. The district court committed four fundamental errors. The first two errors arise from what I would suggest is a confusing and inconsistent specification for the 700 patent. The resolution of these first two issues, upon which the questions of infringement and validity turn, turn on whether the incorporation by reference at column 1 lines 53-54 of the 700 patent is given meaning, or alternatively, whether the patentee's effort to broaden the claims in the 700 application controls. Let's assume that we were to agree hypothetically that you're correct, that the specification of the 525 disclaimed multiple inputs and required a single input. Of course, that was incorporated in the 700 specification. Just from a claim construction standpoint, you would seem to be in a situation in which there's an inconsistency between the incorporated material and the specification of the 700 patent. Because the specification of the 700 patent is revised, is rewritten, seems to allow for multiple inputs. Under those circumstances, wouldn't we look at the specification of the 700 patent rather than the incorporated specification in reaching the claim construction determination? Your Honor, I don't think so. If I take your premise correctly, which is the incorporation by reference operates to incorporate that which was in the 96 application but which is not in the 2000 application. I think critically important, what was in the 96 application and not in the 2000 application falls into two fundamental categories. There are the 24 references to single input numbers movable in six degrees of freedom and there is a Chang disclaimer. There is almost nothing else that's been removed when the 2000 application was filed. So the question becomes, and this is I think the premise of your question, if the incorporation by reference is given full meaning, what was incorporated? Well, what was incorporated were the two categories of information I've just described. Well, I think what my hypothetical was is assuming that the original 1996 application is inconsistent with the idea of multiple inputs. It's confined to a single input. But on the other hand, the specification of the 700 patent clearly allows for multiple inputs. Let's assume we're in that situation. What do we do about claim construction when we have a seeming inconsistency hypothetically between the incorporated material and the specification of the 700 patent? Your Honor, I think there are two possible resolutions to that. I think that whichever way the court goes would result in a judgment for Nintendo. Let me describe two and I think I'll answer your question. If Your Honor takes your hypothetical, what you have is a specification describing a single input number, a specification describing multiple input members, and a disclaimer of the latter but not the former. So one reading of what is a confusing and inconsistent specification is you claim multiple forms of the input number, including single input numbers. You've disclaimed everything other than a single input number. Then you get the narrow claim construction, which was urged by Nintendo below, and there's no infringement. The alternative is that you ignore the incorporation by reference of the disclaimer. And you say the disclaimer had no effect to disclaim multiple input numbers. And the disclaimer, Your Honor, the court's in many different types of disclaimers. This is a six paragraph column and a half discussion of a piece of prior art with a culminating paragraph being this piece of prior art, Chang, has a multiple input number. That's why it's disadvantageous compared to the invention. If you were to ignore the disclaimer, if we were to ignore the material that was taken out, I would say two things. One, I'm not sure what effect we'd be giving to the incorporation by reference. But you then would reach the broader claim interpretation that the court adopted. And if you reach that, the patent would be invalid for failure to satisfy the written description. And that's for two reasons. But your problem as a written description issue is it becomes a question of fact, whereas the claim construction issue is a legal question. Your Honor, it becomes a question of fact. But the question before the court is whether that question of fact could have been decided j-am-all as a matter of law. And to some extent, the procedural posture is a little different than power oasis, which was on summary judgment. This is after a jury determination. But the issue is the same. In power oasis, the court took the declaration, which was the evidence of the patentee, and examined each of the references in the patent that the patentee claimed provided written support. In reviewing the j-am-all determination, that is the same discipline that we would urge upon the court. And what the court, in looking at the jury verdict on this factual question, there are really only five things that Anna's case relies upon. The first is figure two of the patent. The figure two of the patent has accompanying text. And the accompanying text explicitly states that the trackball is a single input number movable in six degrees of freedom. The second thing that they rely upon- It says in this example, language which unhappily was omitted by ellipses in your reply brief. Your Honor, it says that the trackball- I think our representation is still correct, because they were saying that the trackball was an example of a non-single input number. And the portion we quoted for Your Honor says explicitly that it is. What's meant by in this example? Well, Your Honor, there are a series of examples. And in all of the examples in the 96th application, there's a single input number. And in this example, it was figure two of the patent, and they were discussing the trackball in figure two. And when they were saying in this example, they were referring to figure two, that is important because that is the example that the plaintiff is relying upon to suggest there's written description support. How can there be written description support for a trackball which is less than movable in six degrees of freedom when the specification says in this example it's different? So I agree with you it says in this example, but the focus is because that's what they rely upon. The second thing they rely upon, Your Honor, is the claims of the 525 patent, which referred to something being movable in two axes. But those claims were added in the year 2000. They weren't in the 96th application. The 96th application claims had single input numbers movable in six degrees of freedom. These claims that they rely upon were claims that were added at the same time, in the same period of time that the 2000 application was filed. The third thing that they rely upon is a portion of the specification that, to be sure, describes joysticks and trackballs in the prior art that are movable in less than six degrees of freedom. But six lines later in the specification, the specification specifically says, but in this invention we have a single input number movable in six degrees of freedom. Those are the three references they rely upon in the specification. The only other two things they rely upon that they say would create substantial evidence that the 1996 application satisfied the written description requirement are these. Testimony of Mr. Koshi Ishii, a Nintendo engineer. But when the court considers the two pages of Mr. Koshi Ishii's testimony, you will notice two things. First, he's given figure two and asked to comment upon it without the accompanying text. And the accompanying text is that which says explicitly that the trackball is a single input number movable in six degrees of freedom. The second is this. He is asked about three sensors. And the testimony is, to be sure, a little confusing. And then the whole premise of the questions follows from those three sensors. Well, when the court considers figure two, there are six sensors for the trackball. And sensors 106, 110, and 114, you will search the record in vain for any suggestion to Mr. Koshi that he discuss those. So he's focused on three of the six sensors. He gives testimonies about them. And then there are hypotheticals that address what happens if the collet is removed, what happens if the trackball is removed. That latter set of questions is fundamentally questions of what might have been obvious from the written description. But as this court held in Paroasis, that which might be obvious to one of ordinary skill in the art is insufficient to satisfy the written description requirement. That is the evidence, Your Honor, that Hanscape says provides a factual predicate, substantial evidence for the implicit jury determination that the written description was satisfied. If the court adopts a broad claim interpretation, we would urge that as a matter of law, those five or six things they cite are insufficient to satisfy the written description requirement. If the court alternatively decides that the incorporation by reference is fully effective, it incorporates all that which is in the 96 application. And in the 96 application, we have 24. I think, Your Honor, this goes to your question about in this example, there are 24 references to single input members movable in six degrees of freedom relative to a reference point on the controller. All of those were taken out in the 2000 application. Every example in the 96 application is a single input member. And any fair reading of this patent would lead to the conclusion that the invention described is this. There were input members with multiple inputs. There were input members with single inputs. When you had a single input member and you were trying to have it move in six degrees of freedom, you had problems with wires and connections going all over the place and interfering with each other, and they were costly. Mr. Armstrong claims to have come up with a sensor that will allow you to cost effectively and commercially reasonably have a single input six degree of freedom sensor. Let me just say one more thing about their argument on the written description. In their brief, they also rely upon two earlier patents in the family. Earlier than the 525 patent, those two patents are not patents from which they've claimed priority. And if the court considers them, you'll see for good reason. In both of those patents, they do describe controllers moving in six degrees of freedom. The language on single input members is not there. So it's not a coincidence the claims would be different. So the court is left with a prosecution history that has this chronology. Specifications not referring to single input members movable in six degrees of freedom twice. The 96 application intentionally crafted to describe an invention which is a six degree of freedom controller. 2000 claims added to the 96 application and claim a continuation in part application filed in 2000. Eliminating all of those references, expanding the specification, and then two years later expanding the claims. When was that filed, Mr. White? 2000, your honor. 2000. Although the claims that are asserted in this trial were not asserted until 2002. I'm in the middle of my rebuttal time, your honor, and I'll say my rebuttal time. Any questions for Mr. Lee while he's here? I do. I have one question regarding the jury verdict on damages. Obviously, the Allen charge might have had some impact on getting that jury verdict out. Is there any indication that maybe there was no substantial evidence for the support of the $21 million damage award versus the possibility it was just a compromise verdict by the jury at that point in time? Right, your honor. I think it's a fair question. I think it very may well have been a compromise verdict given the Allen charge, which is over our objection. But even if it were a compromise verdict, it would have to be supported by substantial evidence. And there's no substantial evidence to support the $21 million verdict. Really, what Aniscape argues is two fundamental things. They first say that, well, you can take the numbers that were on the demonstrative before the jury, and you can reverse engineer this to a number that's about $21 million. You can only reverse engineer it if you're going to assume that for every Wii remote that's paired with a Wii Classic, you're going to have seven of remotes for every Classic. But in order to infringe the patent, by their accusation, it's a one-on-one thing. So counting seven is just taking the number and trying to reverse engineer it back. If it's one-to-one, which we suggest is supported by the evidence, you would be at $5.4 million. The only other thing they rely upon is the Sony license. Well, there are two things they rely upon. First, they rely upon Mr. Braddock's testimony that there were licenses between 3% and 7%. Mr. Braddock said he never even read them and never gave any opinion that 7% was right. And then they rely upon the Sony license. But the Sony license was a $10 million payment for an exclusive license to another patent, cross licenses going back and forth, and the cross licenses including the 700 patent. Equally important, that was a fully paid-up license. How could a fully paid-up license at $10 million on an undefined royalty base provide substantial evidence for a jury determination that a $21 million royalty would be reasonable on our royalty base? Thank you. We'll save your rebuttal time. And would you enlarge Mr. Cauley's time by the amount we've run over as well? Mr. Cauley? May it please the court, Douglas Cauley of McCool Smith in Dallas for the appellee and escape. The false dilemma that is posited by Nintendo in this case is fatally undercut by the fact that the 96 application as well as the disclosures of the 525 patent and the 700 patent clearly disclose an embodiment that lacks a single input member structured to activate sensors in six degrees of freedom. Before I refer the court to that portion of the specification particularly. The key question here, I mean there is a disclaimer of Chang or criticism of Chang in the 1996 application. The question and you're saying we shouldn't make anything out of that because there's an embodiment that's disclosed in the 1996 application that's a multiple input embodiment. And that's the ball and column, right? Correct, Your Honor. So how do you deal with the language I was asking Mr. Lee about which talks about ball and column being a single input? Well, that language as the court observes in two ways. First of all, the first thing that Nintendo omitted from that language is that it refers to figures 2 through 4 and pointedly omits figure 5 which supplements figure 2 in a way that I'll describe in a moment. And second, the ellipse conveniently omitted the in this example language clearly indicating that this applicant had another example which is disclosed in the patent that does not use the track ball to control six degrees of freedom. In referring to figure 2. That disclosure in the 1996 application? Yes. Which disclosure, Your Honor? The language that I just quoted or the figure? The language that I just quoted is on page 8770. No, I'm sorry. That's wrong. It is in the application. 8761 is it? Thank you, Your Honor. 8761. It's critically important for the court to understand the following textual distinction. An error that Nintendo invites this court to fall into in order to understand figure 2 and figure 5 and why they disclose an embodiment that lacks control by the track ball in six degrees of freedom. The issue is not whether the element is movable in six degrees of freedom. Any object that can be held in the hand is movable in six degrees of freedom. What the asserted claims require is that the movable element be structured to activate sensors so as to achieve movement on the screen in six degrees of freedom. With that in mind, let's examine figure 2. Figure 2 consists of a track ball surrounded by a collet. What's your premise with respect to figure 2? Do you agree that figure 2, according to the specification of the 1996 application, shows a single input? No. No. But they do say with respect to figures 1 and 4 that that's a single input. Yes. But figure 2, if the court will observe it carefully, is not structured so that the track ball can activate sensor 114. Only about a third of that track ball projects above the collet. Even in the strained interpretation that Nintendo advocates... But it sounds to me as though you're asking us to ignore the pretty clear language here that says in this example, and they're referring to figures 1 to 4, that that's a single input rather than multiple inputs. You're asking us to say, oh, well, when we read figure 2, we find that this language in the specification is incorrect. No. Well, if the court interprets that language of the specification as a categorical statement, I think that it is incorrect because figure 2 discloses a figure which lacks a single input member operable in six degrees of freedom. Supplement that with the discussion of figure 5 that appears at the top of page 8770 of the application. There, in discussing the embodiment of figure 5 where there is a rotatable collet that is used to control certain degrees of freedom, the applicant recognizes that it may still be desirable. It does not bar making the track ball operate six degrees of freedom. But clearly, the recognition there is that it's not necessary, that there is a disclosure combining figure 2 and figure 5 in which the track ball may not operate in six degrees of freedom. What's the difference? Let's assume that we reject your point about figure 2, just hypothetically, and that we say, okay, they said that figures 1 to 4 showed a track ball collet embodiment which is a single input. And your argument is, well, they include figure 5. What's different between figure 5 and figures 1 to 4? Figure 5 includes the ability to control degrees of freedom by rotating the collet. And the language of the application at 8770 recognizes that although the track ball, it's not barred from continuing to be operable in six degrees of freedom, that it's not mandatory. That's what's different. Where does it say that at 8770? Top of 8770, where it says, when a rotatable collet is used, a sensor is used to detect rotation of collet 16 as described above. But this does not bar still having a sensor encoder in communication with track ball 12. I take it there was no testimony about this, right? Well, there wasn't testimony with the degree of precision that I think your honor is asking about. There was testimony from two witnesses, Mr. Koshiyishi, but not about this statement. No, there was not. However, this is a question of sufficiency of the evidence. Now, the testimony of Mr. Koshiyishi was criticized in Nintendo's argument as not being specific enough, as not discussing every sensor, but the fact of the matter is that the jury heard testimony from Mr. Koshiyishi that in the embodiments that we're looking at here, that without the collet, the track ball controls less than six degrees of freedom. But he didn't really seem to address the question of whether the track ball collet combination was a single input or multiple inputs. He wasn't addressing that, right? Well, he didn't address the issue of whether they were single or multiple. He did state that if you remove the collet, that the track ball controls three degrees of freedom, less than six. Dr. Howell, of course, and ESCAPE's expert witness testified to the same effect. Well, what about the inventor's testimony? What is it, 4532? Yes, Your Honor. The answer to the inventor's testimony is quite simple, and it's disposed of by the standard of review and examining an issue for the sufficiency of the evidence. In the Fifth Circuit, the analytical approach is to examine the evidence most favorable to the jury verdict to determine if, based on that evidence and that evidence alone, a reasonable jury could have reached the conclusion that it did. That contradictory evidence by the inventor, if indeed that's what it is, is not part of the analysis. The question is, does figure two, figure five, and the rest of what in claim construction would be called the intrinsic evidence, coupled with the testimony of Mr. Koshiyishi and Dr. Howell, does that form sufficient evidence to support the jury verdict finding that there is adequate written description? That would seem to be a fair statement. Thank you, Your Honor. Well, I always strive to be fair before the court. Let me then move on to discuss a moment, what is closely related, and many of the building blocks we put in place are applicable to claim construction as well. Contrary to Nintendo's urging, there was no clear disavowal of subject matter in this case, similar, for example, to the Simon case. Specifically, the applicant, for the same reasons we've already discussed, the disclosures of figure two and figure five and the accompanying portions of the specification and the related applications, disclosed an embodiment without a single input member controlling all six degrees of freedom. But do you agree that there would be a disclaimer here if we concluded that there was no multiple input embodiment disclosed? No, and here's why. Consider Phillips. The court will recall that in Phillips, every disclosed embodiment used a non-90 degree baffle. Recall that in Phillips, the specification discussed the benefits of using a non-90 degree baffle. Recall that in Phillips, prior art was criticized, and it was explained that there were advantages of the invention over the prior art because it used non-90 degree baffles. And yet, this court en banc held that those factors did not rise to the level of a clear disavowal of subject matter. Contrast Phillips and this case, for example, with the Simon case. In that case, there appeared a statement which the court described as the most important factor in limiting the invention to a single embodiment. The statement, for all embodiments claimed in this invention, there are coaxial lumens. Recall that in Simon, there was a statement that the present invention uses coaxial lumens. And of course, prior art was distinguished in Simon on that basis. The case presently before the court is far more similar to Phillips than it is to Simon. Because this case, although the pro se applicant certainly wrote a sprawling and we have to agree at times inconsistent specification and application. This case lacks the kind of categorical statements that the Simon court found combined that invention to a single embodiment. Now, the court has, of course, often struggled with this issue and has struggled with it since Phillips. In the safety care case, the court was called upon to define the difference between a pushing force and a pulling force. But your honor went to some pains in that decision to point out that that was a case in which there was no importation of a limitation. It was merely a definitional exercise as to what is a pushing force. Within the last year in on-demand machines case, the question was posed, what's a consumer? And the issue was, is that limited to retail consumers or could it be expanded to other kinds of consumers? Once again, the court used matters and including disclaimers in the specification to define that term consumer, but did not import a limitation into the claims. You're telling us that because certain facts were respected or the findings were respected in other cases, we should do so here because some of those decisions look to be a little bit extreme. Is that right? No, I'm saying that they're different than this case. They're distinguishable from this case, your honor, where Nintendo is urging the wholesale importation of a new limitation into the claims. Consider again the proper structural analysis here. As this court pointed out, for example, in the BDO versus Becton decision, there's got to be a textual hook to be able to hang... Why isn't the word controller? Sorry? Why isn't it the word controller? First, the word controller is used throughout the specification and the application to refer to devices that unquestionably do not have control by a single member in six degrees of freedom. Chang is described as a controller. A mouse type device, which has control in only three degrees of freedom, is described as a controller. Indeed, perhaps the most compelling reason, though, is that at Markman, Nintendo's counsel at A4198 agreed that the word controller alone does not imply or justify the importation of this limitation. Where did he say that? A4198, Markman hearing in Lufkin, Texas. In retreat, Nintendo... I'm sorry? We're on 4198, isn't it? It's page 10. Now, Your Honor, I will, and frankly, I think you would probably tell me I was crazy if I didn't. Outside the context of this patent, if we were to step outside the context of the specification, and you were to ask me or Mr. Desmelek, who was Nintendo's expert, what does a controller mean? A controller in the abstract is obviously broader than a single input member six degree of freedom controller. That doesn't seem to help you too much. Well, then, if that doesn't help me and Your Honor's mine... You do have other arguments. I guess I'll fall back on my first argument, which is that use of the word controller is widely used throughout the specification to refer to things that are clearly not a single input member. And if that's going to become important, I'll refer the court to the 700 patent at A5048, the description of Chang as a controller at A8011, and the description at A8010 of a mouse-type controller, which uses only three degrees of freedom as a controller. Any more questions? But you would need to get back to the 1996 application with that particular definition, would you not? I think not, Your Honor. Your Honor, this is claim construction, and I think that the law is clear that not only the prosecution history of the patented issue, but the prosecution history of the parent and grandparent applications are relevant to claim construction, completely independent of the written description argument as to how far you can go back for a priority date. Well, for a priority date, that's true, but here you are talking about claim construction. Yes, Your Honor. With respect to that, can we go back to the earlier applications in order to determine what controller really means? I'd suggest, Your Honor, that the law in the circuit is now fairly clearly developed that in claim construction, that related patent applications and prosecution histories can be consulted. Absolutely, but where in the 1996 application is there support for what you're saying? The discussion of Chang. Just Chang? That's the only one I can remember standing here, but clearly Chang is referred to as a controller. Any more questions? No. Thank you, Mr. Collier. Thank you. Thank you, Your Honor. So how about figure 5? Your Honor, all figure 5 says is that- Figure 5 is not mentioned in the text you rely on. Right. Your Honor, if the patent is read in its entirety, figure 5 is not a problem at all. The patent says that you could have single input methods, and you can have additional buttons, controllers. There are reasons, as we've said in our brief, that you might want to have a video game controller that has one controller movable in six degrees of freedom, but additional buttons, bells, whistles that would allow for additional movements. The example we gave you is a controller that might be moving Mario around. Well, that may be true, but it's rather notable that figure 5 is not included in this description of the ball and collar being a single input. So help me understand why I shouldn't be concerned that figure 5 is left out there. Your Honor, because if you look at what's at page 8770, and if we look at- let me say these two things. If you look at page 8770 that talks about figure 5, let's look at what it says. When a rotatable collet is used, a sensor is used to detect rotation of collet as described above. But this does not bar still having a sensor encoder in communication with trackball 12 for detecting rotation of the trackball about the yaw axis. All that says, Your Honor, is that you can have the collet, it can detect movement, and that doesn't affect the ability of trackball 12 to detect movement in the yaw axis. So let's then go back to what the patent says about figure- What line was that on 8770? 8770, Your Honor, starts at line 1. When a rotatable collet is used, a sensor is used to detect rotation of collet 16 as described above. But this does not bar still having a sensor encoder in communication with trackball 12 for detecting rotation of the trackball about the yaw axis. And this would give the user the option of rotating about the yaw via the trackball or the rotatable collet. What it's saying is you can use either to get this yaw axis rotation. If you then take the reference to figure 12, Your Honor, and go back to column 11 of the patent at lines 19 to 28, that's where the reference is not to figures 1 or 4, but figures 1 through 4. But more importantly, there's the specific reference to trackball 12, the same trackball 12 that's referred to at this page. And it's referred to as scanned operable single input number operable in the full system. I'm sorry, Your Honor, column 11 of the 525 patent at line 19. So this precedes the portion that Mr. Cawley was reading to Your Honor. And to put it in... This is the same in the 1996 application? Yes, Your Honor. I'm looking at 8757. Yes, Your Honor. With reference to? What line are you relying on there? In the 525 patent, Your Honor, or the... In the application. Let me go back to the application then. Just give me a second. So if you go to page 8761, which precedes this by about nine pages, at line 30, with reference to figures 1 to 4, in particular wherein trackball type embodied at 9, being a hand operable 6 degree of freedom controller for outputting control information, is illustrated showing a rectangular housing, which is considered a reference member relative to which is operated trackball 12, which in this example is the hand operable single input number operable in the 6 full degrees of freedom. So if you read this page in 8770, all that they're saying about figure 5 is figure 5 allows the collet to detect movement in a couple degrees of freedom. That doesn't interfere with the ability of the trackball to detect movement on the yaw axis. Therefore, it still can operate in 6 degrees of freedom. And I think, Your Honor, Mr. Colley is correct in terms of saying the question is, is there substantial evidence? But the question is not just did someone say that figure 2 is multiple input numbers? The question is, is there evidence to support that proposition? And what you have here is this. The first sentence of the abstract says the invention is single input numbers. 24 times in the background of invention, they say single input numbers. The only example that they rely upon is figure 2 and 5. And figure 2 and 5, fairly read, are a single input number. And figure 5 just says if you want the collet to do some sensing, it doesn't interfere with it. The problem I have is both sides' arguments are very interesting. You're wise-spec-ing the specification here. None of this, I think, was argued to the jury. Actually, it was, Your Honor. There are portions you will see in the record appendix where it was the argument that the 1996 application didn't support. Well, yeah, sure, that broad question was argued. But the specific questions we're dealing with here about the disclaimer here and your argument about figures 1 to 4 being described as a single input and their argument that figure 5 is not included and that figure 5 means that it's only talking about one example and that the specification contemplates multiple. And all of this is being presented to us, but it wasn't presented to the jury. Your Honor, I would say two things. I mean, I think that the case is a little complicated because a lot of what we've argued to Your Honor today arises and falls from the incorporation by reference provision, which happens to be a legal question for the district court and for you. Significantly, Mr. Collick did not argue that it wasn't effective to incorporate the Chang disclaimer. My final point was going to be if that's true, if it incorporated the Chang disclaimer, that is a disclaimer of multiple input members and then the narrow claim construction is correct and we don't infringe. As to your second point, Your Honor, you're correct. And this is an issue that neither of us has briefed, but the fact of the matter is for claim interpretation, Your Honor asked me about claim interpretation versus written description. For claim interpretation, the question is what does the claim term mean? In light of the intrinsic evidence, the specification would have ordained skill in the art. The written description inquiry is what would have ordained skill in the art gleaned from the specification as to whether someone had possession of the invention. Does that support the claims? They're very close. So that's the reason that we're making the arguments to Your Honor, but to the court on that basis. But I think that if the court considers, I mean, the focus of the argument today has been on figure two. And if the panel considers the fact, the first sentence of the abstract, the background of the invention, the Chang disclaimer, all of which precedes the portions of 87 to 61, all of which precedes the discussion of figure five. We would suggest that those facts are not in dispute. And as a legal matter, they are insufficient to support the broader claim interpretation. Indeed, Your Honor, if they weren't, if they really were sufficient, why would Mr. Armstrong in 2000 have deleted those 24 references, have deleted the Chang disclaimer, and have changed language? There's only one reason he did that. It's because he knew that they were insufficient. Thank you, Your Honor. Thank you, Mr. Lee, Mr. Colley.